UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NIKITA KENNEDY,

               Plaintiff,

      - against -                              **MEMORANDUM & ORDER**
                                                   08-CV-2079 (RRM) (RML)
THE HARTFORD INSURANCE CO.,
MINNEAPOLIS DISABILITY CLAIMS,

               Defendants.
------------------------------------------------------------X

**MAUSKOPF, United States District Judge.**

*Pro se* Plaintiff Nikita Kennedy brings this action against The Hartford Life and Accident Company, i/s/h/a The Hartford Insurance Company, Minneapolis Disability Claims ("Hartford" or "Defendant"), alleging a failure to pay insurance claims under a long-term disability policy issued by the Hartford (the "Policy") pursuant to an ERISA benefit plan for which Plaintiff was eligible as a result of his employment with the Allstate Corporation (the "Plan"). The Hartford argues that it was entitled to withhold those payments as an offset to amounts received by Plaintiff's son, Rasheid Kennedy, from Social Security Disability Insurance ("SSDI") as his father's dependent under the Social Security Act and the rules promulgated by the Social Security Administration.

The issue before this Court turns on whether Plaintiff's disability insurance under the Hartford policy allowed for such an offset. Taking the undisputed facts in the light most favorable to the Plaintiff, it is clear that the Policy unambiguously allows Plaintiff's benefits under the Policy to be offset in an amount equal to the Dependent SSDI payments made to his son. Accordingly, Defendant's motion for summary judgment is GRANTED, and Plaintiff's Complaint is DISMISSED.

## BACKGROUND[1]

Plaintiff, an employee of the Allstate Corporation at the time he became disabled, is covered under a Group Benefit Plan, GLT-673454 (the "Plan"), pursuant to which the Hartford issued a long-term disability benefit policy (the "Policy"). Plaintiff was granted Long Term Disability ("LTD") benefits under the Plan on October 2, 2003, retroactive to January 4, 2003.[2] At the time LTD benefits were awarded, Plaintiff received a retroactive lump sum payment in the amount of $18,760, and his monthly benefit award was set at $2,100. As of the filing of Defendant's motion, Plaintiff was still receiving benefits under the Policy.

Subsequent to the initiation of Plaintiff's benefits under the policy, Plaintiff applied for and was awarded Primary SSDI benefits on May 13, 2005, retroactive from May 2003, in the amount of $32,611, and in the amount of $1,558 monthly from May 2005 forward. Under the Policy, Primary SSDI benefits are offset against Policy benefits such that an insured only receives a certain percentage of his pre-disability monthly income, regardless of the source from which it derives. Accordingly, Plaintiff's monthly payment under the Policy was reduced from $2,100 to $1,379 per month. Plaintiff was also found to have been overpaid by $14,888 due to the retroactivity of the SSDI award, and, when Plaintiff could not immediately refund the overpayment amount, he agreed to a further reduction of his monthly benefit until the overpayment was fully satisfied. This offset of Primary SSDI benefits is not at issue in this litigation.

---

[1] The facts relevant to this decision are undisputed, as reflected in Defendant's Statement Pursuant to Local Rule 56.1 (Doc. No. 11) ("Def.'s L.R. 56.1 Statement") and Plaintiff's Response thereto (Doc. No. 14) ("Pl.'s L.R. 56.1 Response"). To the extent that the opposing statements assert conclusions of law, they have been disregarded and the Court has itself applied the law to the undisputed facts.

[2] While Defendant's L.R. 56.1 Statement indicates that Plaintiff's benefits were retroactive to January 14, 2003, this appears to be a typographical error as the underlying Claim File document states that January 4, 2003 is the correct date.

However, in addition to the Primary SSDI benefits awarded to Plaintiff, Plaintiff's son Rasheid Kennedy was awarded Dependent SSDI benefits in the amount of $780 per month for the period from February 1, 2003 to June 30, 2005. Rasheid Kennedy's benefits were calculated based on the period of time that he was determined by the SSA to have been a dependent of his father, but were actually paid in a lump sum after Rasheid had turned nineteen years old and was no longer living with or dependent on his father. While the parties dispute whether Rasheid Kennedy was properly eligible for Dependent SSDI benefits, it is undisputed that he did receive them.

By letter dated November 2, 2005, the Hartford informed Plaintiff that, as a result of his son's receipt of Dependent SSDI benefits, it determined that he had been overpaid in the additional amount of $22,620, and that his monthly benefit under the Policy would be reduced from $1,379 to $599 for the period from February 1, 2003 through June 30, 2005 (the Dependent SSDI award period). Because of the combination of overpayments resulting from both Primary and Dependent SSDI benefits, the Hartford claimed that, as of November 2, 2005, Plaintiff owed a total of $28,513 ($22,620 as a result of his son's receipt of Dependent SSDI benefits and $5,893 remaining to be satisfied from Plaintiff's receipt of Primary SSDI benefits). To repay this sum, Plaintiff's Policy benefit was withheld until his alleged overpayment was satisfied.[3] As of October 9, 2008, the payments to Plaintiff under the Policy had resumed as his entire overpayment was deemed satisfied.

---

[3] The Hartford asserts that it reduced the amount of the claimed overpayment by $780 in January of 2007 to reflect that Plaintiff's son's Dependent SSDI payments had ended on May 31, 2005 and not June 30, 2005. Plaintiff disputes that his overpayment was ever adjusted downward, stating that the entire amount of $22,620, originally claimed as an overpayment resulting from his son's Dependent SSDI benefits, was withheld and never corrected. *See infra* at 11 & n.6.

Plaintiff now challenges the propriety of the offset of his Policy benefit by the amount of the Dependent SSDI benefit received by his son as violative of the terms of the Policy.

## THE POLICY

Plaintiff's benefits under the Plan are administered by the Hartford pursuant to the Policy. The Policy provides that:

> The Plan has designated and named [the Hartford] as the claims fiduciary for benefits provided under the Policy. The Plan has granted [the Hartford] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

(Group Benefit Plan, Claim File (Doc. No. 11-4) (annexed to the Declaration of James A. Powell as Ex. A) at Hartford 0024). The Policy also provides that:

> An overpayment occurs when it is determined that the total amount we have paid in benefits is more than the amount that was due to you under the plan.
>
> This includes, but is not limited to, overpayments resulting from:
>
> 1. Retroactive awards of *Other Income Benefits*;
>
> 2. Failure to report, or late notification to us of Other Income Benefits or earned Income Benefits;
>
> 3. Misstatements; or
>
> 4. An error we may make.

(*Id.* at Hartford 0015 (emphasis added).) "Other Income Benefits" are defined as:

> The amount of any benefit for loss of income, provided to you or your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes any such benefits for which you or your family are eligible or that are paid to you, to your family or to a third party on your behalf, pursuant to any:
>
> . . .
>
> 6. Disability benefits under:
>
>    a) the United States Social Security Act . . . that you, your spouse and *children* are eligible to receive because of your Disability.

4

(*Id.* at Hartford 0018 (emphasis added).)

## DISCUSSION

Plaintiff's claim, essentially, is that his benefits under the Policy should not have been set-off by the Dependent SSDI benefits received by his son Rasheid Kennedy. Plaintiff argues that the Policy fails to define the phrase "your family" in its provision providing for set-off of "Other Income Benefits," and that the better reading of that provision would only allow for set-off where Dependent SSDI benefit payments were made to family members who were still dependent at the time of payment. Plaintiff also makes the additional arguments that, even if there were overpayments here, their recoupment should be waived, and that there is a dispute of fact as to whether his son was properly entitled to Dependent SSDI benefits.

In support of these arguments, Plaintiff contends that, at the time payment was made to his son, Rasheid was an adult and not, in fact, dependent on Plaintiff. Plaintiff submitted a declaration from his son, Rasheid, in which Rasheid averred that as of the actual date of payment, he was no longer dependent on his father, nor had he been for some time. Rasheid further averred that he had used the Dependent SSDI benefit payment to support himself and pay his own bills.

Defendant argues that it acted properly under the Policy in setting-off Plaintiff's benefits by the amount of Dependent SSDI paid to his son. It argues both that the terms of the Policy are clear, and that, in any case, as plan administrator, the Hartford's interpretation of the Policy is entitled to deferential review under an "abuse of discretion" or "arbitrary or capricious" standard, and that it has met its burden under that standard. In any event, it argues that a plan administrator's right to offset Dependent SSDI benefits pursuant to terms similar to those in the Policy has been well-recognized by the courts.

## I. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Once a moving party meets its initial burden of demonstrating that no genuine issue of material fact exists, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in their favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Nonetheless, the district court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Giano v. Senkowski*, 54 F.3d 1050, 1052 (2d Cir. 1995). Where no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). This Court's task is limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. *See Kerzer*, 156 F.3d at 400.

## II. *Pro Se* Plaintiff's Submissions Are Liberally Construed

Construing *pro se* Plaintiff's submissions liberally, as required, *see McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999), this Court interprets them to raise the strongest arguments that they suggest. *See Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993). A court must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights due to his lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir.1983). However, the right

of self-representation cannot exempt a party from compliance with relevant rules of procedural and substantive law. *Id.* at 95.

### III. The Hartford's Interpretation of the Policy Is Reviewed under the Deferential Arbitrary and Capricious Standard

The Supreme Court has held that where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the administrator's decision is to be reviewed under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2006). Here, the Plan clearly bestows discretionary authority to determine eligibility and to construe the terms of the Plan on Defendant. (*See* Group Benefit Plan, Claim File at Hartford 0024 ("The Plan has granted [the Hartford] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.").)

### IV. The Hartford's Interpretation of the Policy Is Controlling

Under an arbitrary and capricious standard of review, "the scope of judicial review is narrow." *Celardo v. Gny Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) ( citing *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 117 (2d Cir. 2002); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). A court may overturn a plan administrator's decision to deny benefits only if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442 (internal quotations omitted); *see also Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) ("The Court may not upset a reasonable interpretation by the administrator."). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a

preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal quotations omitted).

Furthermore, the Second Circuit has held that, "[i]n a situation 'where both the trustees of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.'" *Celardo*, 318 F.3d at 146 (quoting *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir. 1983)). The Circuit also instructs that courts "are not free to substitute [their] own judgment for that of the [plan administrator] as if [they] were considering the issue of eligibility anew." *Pagan*, 52 F.3d at 442.

Here, the Hartford's interpretation of the Policy is neither arbitrary nor capricious. The parties agree that the Hartford is entitled to set-off Plaintiff's benefits when he receives certain Other Income Benefits; the dispute turns on whether the Dependent SSDI benefits paid to Rasheid Kennedy are properly included in that category. Because the SSDI benefits at issue were paid as a retroactive lump-sum, the Hartford claimed that they resulted in an overpayment of benefits under the Policy. (*See* Group Benefit Plan, Claim File at Hartford 0015 (noting that overpayments may result from the retroactive award of "Other Income Benefits").) The Policy includes in the definition of Other Income Benefits "[t]he amount of any benefit for loss of income, provided to . . . *your family*, as a result of the period of Disability for which you are claiming benefits [and] . . . includ[ing] any such benefits . . . that are paid . . . to *your family* . . . pursuant to any: . . . [d]isability benefits under . . . the United States Social Security Act . . . that . . . your *children* are eligible to receive because of your Disability." (*Id.* (emphasis added).) The Hartford argues that this language encompasses the Dependent SSDI benefits paid to Rasheid Kennedy, regardless of whether they were actually paid out while he was a dependent or on his

own. This Court agrees. The language of the Policy clearly states that the Hartford is entitled to offset disability benefits made under the Social Security Act to the dependent children of disabled insureds against benefits paid under the Policy. Accordingly, the language of the Policy comports with the Hartford's interpretation, which is reasonable and supported by substantial evidence, to wit, the text of the Policy.

Moreover, Dependent SSDI benefits are paid out pursuant to the Social Security Act and represent an entitlement to the dependents of disabled insureds—not to the insureds themselves. 42 U.S.C. § 402(d); *see United States v. Hayes*, 135 F.3d 133, 139 (2d Cir. 1998) (holding that payments received under Dependent SSDI program are made directly to the dependent and disabled parent has no independent claim to those amounts). Accordingly, it is irrelevant when the Dependent SSDI payments were made to Rasheid—Plaintiff was never entitled to those funds, and so his argument that set-off of his benefits under the Policy is unjust because he did not benefit from the Dependent SSDI payments to his son is without merit.[4] The numerous courts who have examined similar provisions in other ERISA disability benefit plans, including some administered by the Hartford and containing identical or near-identical language, have reached similar conclusions as to their legality. *See, e.g., Fortune v. Group Long Term Disability Plan for Employees of Keyspan Corp.*, No. 08-CV-1017 (ADS)(ETB), 2009 U.S. Dist. LEXIS 64190, at *30–33 (E.D.N.Y. July 25, 2009) (holding that the offset of benefits under an ERISA long-term disability insurance plan by amounts received under Dependent SSDI was allowed where the plan administrator was the Hartford and the relevant policy used the same language as

---

[4] As an aside, Plaintiff's argument that he derived no benefit from the Dependent SSDI payments to his son ignores the benefit that flowed to him as a result of his paternal relationship because his son was benefited. While it may be technically true that Plaintiff derived no monetary benefit from the payments to his son, it is false to claim that he derived no benefit of any kind. In any case, the determination of whether Plaintiff was benefited or not is irrelevant to the question of the validity of the Hartford's interpretation and application of the Policy.

the policy in the instant case); *Fortune v. Group Long Term Disability Plan for Employees of Keyspan Corp.*, 588 F. Supp. 2d 339, 341 (E.D.N.Y. 2008) (collecting cases in support of the same proposition); *see also Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198–99 (2d Cir. 1989) (recognizing the validity of ERISA plan terms that allow offset of SSDI benefits against long term-disability insurance benefits).

## V. Plaintiff's Remaining Arguments Are Without Merit

Plaintiff's argument that 42 U.S.C. § 404(b) governs his case must be rejected. This section only applies where the Commissioner of Social Security finds that, although there has been an overpayment to a person receiving Social Security benefits, it would be against equity and good conscience or would otherwise defeat the purposes of the Act to seek a recovery of the overpayment. Here, there is no claim or evidence that the Commissioner has sought to collect any overpayment from Plaintiff; instead, the claimed overpayment is under Plaintiffs' employer-based benefits pursuant to the Plan, and the entity seeking to recoup such overpayments is the Hartford, not the Commissioner of Social Security.

Plaintiff also argues that the Dependent SSDI benefits paid to Rasheid were miscalculated or awarded in error because Rasheid did not qualify as his dependent during at least part of the time period for which he was awarded benefits. Specifically, Plaintiff argues that Rasheid was living on his own, over the age of eighteen, and not a full-time student, and thus should not have been eligible for Dependent SSDI benefits after March of 2004, when Rasheid turned eighteen. *See* 42 U.S.C. § 402(d)(1)(F), (7). However, the propriety of the benefits payment to Rasheid is not before this Court; instead, the issue before the Court is whether the Hartford was correct to off-set Plaintiff's benefits under the Policy by the amount of the

Dependent SSDI benefits actually paid to Rasheid Kennedy.[5] It is undisputed that such payments were made, whether in error or not.

Finally, Plaintiff argues that the Hartford is incorrect in its calculations of the overpayment resulting from the Dependent SSDI benefits paid to his son. The Hartford admits that it initially miscalculated the amount of the overpayment as $22,620, when it should have been $780 less, or $21,840.[6] While Plaintiff denies that he was advised of this adjustment, despite contrary evidence in the Claim File, his conclusory statements that the Hartford withheld the full $22,620 from his benefits is unsupported by any record evidence, and this Court rejects it.

Plaintiff's remaining contentions are also without merit.

---

[5] Notably, Plaintiff states in his opposition only that "[t]o [his] knowledge, [his] son was not a full-time student and did not meet any of the stated eligibility requirements in 2005, when he was age 19." (Pl.'s Opp'n (Doc. No. 15) at 9.) Furthermore, while his son also submits a sworn affidavit in support of the opposition, he states only that he "was not a full-time student in 2005." (Pl.'s L.R. 56.1 Resp., Ex. E.) And, Rasheid's declaration notes that he spoke personally to a representative of the Social Security Administration, and attaches a receipt for his claim of benefits that confirms that conversation. Notably, the regulations allow the Commissioner some leeway in determining dependency, and it is not clear that Rasheid Kennedy was not properly found to be a dependent of Plaintiff until May 2005. *See* 20 C.F.R. § 404.367. In any case, the Hartford was under no duty to determine whether the Commissioner's finding was correct.

[6] While the Hartford's lawyers miscalculate the amount of the overpayment in their L.R. 56.1 Statement by transposing two digits of the originally withheld amount, the Claims Record clearly demonstrates that the proper calculations were in fact made by the Hartford at the time of the adjustment and withholding, and those calculations are relied on in this Memorandum & Order. (*See* Claim File at Hartford 140, 144.)

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's motion for summary judgment is GRANTED, and the Complaint is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
September 21, 2009

_____
ROSLYNN R. MAUSKOPF
United States District Judge